```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION


Leroy Jacobs, individually and  )
on behalf of all others         )
similarly situated              )
                                )
          Plaintiff,            )
                                )
     v.                         )    No. 22 C 2
                                )
                                )
Whole Foods Market Group,       )
Inc.,                           )
                                )
          Defendant.
```

<u>Memorandum Opinion & Order</u>

In this action, plaintiff Leroy Jacobs alleges on behalf of himself and putative Illinois and multistate classes that Whole Foods Market ("WFM") violates the consumer protection statutes and common law of Illinois and fifteen other states by selling its private label "Long Grain & Wild Rice – Rice Pilaf," in boxes that are larger than necessary for the amount of product they contain. Plaintiff claims that notwithstanding WFM's commitment to reducing waste in food packaging, it intentionally misleads consumers about the amount of product they are purchasing by sizing the boxes to fit store shelves, rather than to fit the volume of product they contain. This practice, plaintiff claims, is designed to deceive consumers, as it "makes the shelves look full, which appeals to

consumers and makes them willing to spend more money." Compl. at ¶ 50-51.

As plaintiff acknowledges, federal and state regulations recognize that there may be legitimate reasons for food packaging to contain empty space (known in the industry as "slack fill"). Plaintiff alleges, however, that none of those reasons justify the practice he challenges here. The images below illustrate the disparity between the box size and the amount of product within:

 

Compl. at ¶¶ 19, 21.

Based on this disparity, plaintiff asserts violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and unidentified consumer protection statutes of Pennsylvania, Michigan, Iowa, Rhode Island, Minnesota, Ohio, Georgia, North Dakota, Texas, New Mexico, North Carolina, Virginia, New Hampshire, South Dakota, and Oklahoma, which plaintiff claims are

2

similar to the ICFA. He also asserts claims for breach of express warranty, breach of the implied warranty of merchantability, and violation of the Magnusson Moss Warranty Act, 15 U.S.C. §§ 2301. Finally, plaintiff claims negligent misrepresentation, fraud, and unjust enrichment under the common law of the foregoing states.

WFM moves to dismiss the complaint in its entirety, offering a cascade of reasons plaintiff's claims fail as a matter of law. At the fore is its argument that because the front, back, and side panels of each box contain conspicuous and accurate information about the weight of the product; instructions for preparation; and the serving size and approximate number of servings each box yields when prepared, the packaging is not deceptive as a matter of law under the statutes plaintiff asserts. Defendant emphasizes that plaintiff does not challenge the accuracy or the conspicuousness of this information—in fact, he alleges affirmatively that he "relied on the words and images on the Product [and] on the labeling" when purchasing the product, Compl. at ¶ 99—and that this information dispels any uncertainty a reasonable consumer might have about the amount of rice pilaf one box yields. Because, as explained below, the law supports this argument, plaintiff's consumer deception claims do not withstand defendant's motion. And because plaintiff's remaining claims either hinge on his flawed theory of deception or suffer from separate procedural or

substantive shortcomings, I grant defendant's motion in its entirety.

Defendant's broadest arguments target plaintiff's class claims under the ICFA and other states' consumer protection statutes. Plaintiff does not identify the statutes he relies upon for his multistate class claims, but he alleges that they are "similar to the ICFA and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce." Compl. at ¶ 124. Accordingly, I assume that all of the statutes plaintiff asserts require, as the ICFA does, that plaintiff plead and prove "that the relevant labels are likely to deceive reasonable consumers," which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020).

Plaintiff does not dispute that the packaging he challenges discloses accurate information about the weight and approximate yield of the product as prepared. His theory of consumer deception is that he nevertheless "could not and did not reasonably understand or expect any of the net weight or serving disclosures to translate to an amount of rice meaningfully different from his expectation of an amount which would fill up the box." Resp., ECF 20, at 2. In plaintiff's view, *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019), supports this theory

4

of deception because in that case, the court observed that "the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading." *Id*. at 647 (quoting Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100)). But *Benson* does not support plaintiff's claims on the facts alleged here.

*Benson* involved boxed, ready-to-eat chocolates. As the court explained, a consumer might reasonably expect to be able to estimate the approximate number of chocolates in a particular box based on the box size. *See id*. at 646. But any reasonable consumer surely knows that rice pilaf sold in a box must be cooked in water or another liquid prior to consumption, and understands further that the cooking process will cause the rice to expand in volume. In other words, a reasonable consumer expects the size of the box to bear only a loose relationship to the amount of cooked product its contents will yield. Accordingly, a shopper uncertain about how many boxes of rice pilaf to buy for the family dinner would know not to rely on the size of the box and would look for additional information of precisely the kind plaintiff admits defendant's rice pilaf box contains: the number of servings each box will produce based on a specified serving size. Because that information dispels any tendency to mislead that the box size alone might create, there is no deception as a matter of law. *See Killeen*

5

*v. McDonald's Corp*., 317 F. Supp. 3d 1012, 1013 (N.D. Ill. 2018) ("Illinois law is clear that where other information is available to dispel that tendency, there is no possibility for deception.")(citing *Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 939-40 (7th Cir. 2001).

*Bell v. Publix Super Markets, Inc.,* 982 F.3d 468, 476 (7th Cir. 2020), is not to the contrary. In *Bell*, the Seventh Circuit observed that "[c]onsumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities." *Id*. at 476. The court went on to hold that courts cannot presume, as a matter of law, that "reasonable consumers will test prominent front-label claims by examining the fine print on the back label." *Id*. at 477. But the instant case does not involve ambiguous labeling whose meaning is discernable only by reading the "fine-print." The only "labeling" plaintiff claims to have read was the admittedly conspicuous and accurate information disclosing instructions for preparation, serving size, and number of servings per box.

The point is not, as plaintiff suggests, that defendant is "'immune from suit' just because 'the package accurately lists the product's net weight and quantity.'" Resp., ECF 20 at 4 (quoting *Izquierdo v. Mondelēz Int'l Inc.,* No. 16-cv-04697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016)). The point is that the unambiguous, conspicuous, and accurate information specific to the question of

6

product yield, coupled with the "net weight and quantity" disclosures printed on the box, conclusively dispels any reasonable misunderstanding a consumer might have based on box size (either alone or in conjunction with defendant's general statements elsewhere about its commitment to environmental stewardship and reducing packaging waste, *see* Compl. at ¶ 8) about the amount of rice pilaf she can make with a box of uncooked product. On these facts, plaintiff's theory finds no footing in either *Benson* or *Bell*.[1] Instead, his case more closely resembles *Buso v. ACH Food Companies, Inc.*, 445 F. Supp. 3d 1033 (S.D. Cal. 2020), which asserted consumer fraud claims based on allegedly unnecessary slack-fill in boxes of cornbread mix. The court held that there was no deception as a matter of law, since "consumers are clearly put on notice as to the rough estimate of cornbread that can be made from the product contained within the box." *Id*. at 1038.

Plaintiff's common law fraud claim fails for similar reasons. To prevail on such a claim, plaintiff must establish, among other

---

[1] Plaintiff muddies the waters with the argument that the fact the product "'required preparation by combining the rice with the seasoning packet, water and olive oil' does not change whether a reasonable consumer would expect 'over 50% of the box [to be] empty space.'" Resp., ECF 20 at 3. What plaintiff fails to explain is why a reasonable consumer would care about the ratio of uncooked product to empty space, when what he really wants to know is how many boxes he needs to buy to end up with a given amount of cooked rice pilaf on his serving platter or plate.

7

things, his own and the putative class members' "reasonable reliance" on the defendant's alleged misrepresentation. *Petrakopoulou v. DHR Int'l, Inc.*, 626 F. Supp. 2d 866, 870 (N.D. Ill. 2009). As explained above, even unsophisticated consumers understand that rice must be cooked prior to serving and that it expands during cooking. Accordingly, they cannot reasonably rely on the size of the box to estimate product yield when specific information on that question is printed conspicuously and unambiguously on the box. *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 199-200 (E.D.N.Y. 2018) ("Since a simple 'investigation' would have dispelled any misrepresentation as to the amount of food arising from the size of the box, Plaintiff's common law fraud claim is foreclosed as a matter of law.").

Plaintiff's claims for breach of express or implied warranties and violation of the Magnuson-Moss Act require only brief discussion. As defendant correctly observes, Illinois law requires a plaintiff to provide defendant pre-suit notice of any breach warranty claims—a requirement plaintiff acknowledges he did not satisfy. *See Anthony v. Country Life Mfg., LLC.*, 70 F. App'x 379, 384 (7th Cir. 2003) (observing that the Supreme Court of Illinois interprets 810 ILCS 5/2-607(3)(a) to "require[] a plaintiff to notify the defendant of the claimed deficiency in its product prior to filing suit.") (citing *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996)). Although that is

8

reason enough to dismiss plaintiff's warranty claims under both state law and the Magnuson-Moss Act, *see Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2022 WL 846603, at *2 (N.D. Ill. Mar. 22, 2022) (Magnuson-Moss Act "incorporates state-law notice requirements"), there is more: Plaintiff fails to allege that the rice pilaf sold in the boxes he challenges were not "fit for the ordinary purposes for which such goods are used" as required for implied warranty claims. *Solvay USA v. Cutting Edge Fabrication, Inc.*, 521 F. Supp. 3d 718, 725 (N.D. Ill. 2021). If there is any support for plaintiff's "alternative" theory that defendant breached an implied warranty because the product was "not fit to pass in the trade" because of its excessive box size, he has not cited it. For at least these reasons, plaintiff's warranty claims fail as a matter of law.

This leaves only plaintiff's claims for negligent misrepresentation and unjust enrichment. Defendant argues correctly that the first of these claims is barred by the general rule that "a negligence cause of action cannot be sustained for the recovery of economic loss alone." *Clay Fin. LLC v. Mandell*, No. 16-cv-11571, 2017 WL 3581142, at *4 (N.D. Ill. Aug. 18, 2017), citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69 (1982)). Plaintiff's vague suggestion that his claim falls within an exception to the economic loss rule for allegedly negligent breaches of non-contractual duties arising out of the parties'

9

"special relationship" (such as the attorney-client or accountant-client relationship) finds no support in either the law or the facts he alleges.

Finally, plaintiff concedes that his unjust enrichment claim "will stand or fall with his other claims[.]" Resp., ECF 20 at 10. Because none of his other claims is viable for the reasons explained above, his unjust enrichment claim, too, is subject to dismissal.

For the foregoing reasons, defendant's motion to dismiss is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 16, 2022